People v Sorrell (2021 NY Slip Op 04393)





People v Sorrell


2021 NY Slip Op 04393


Decided on July 15, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 15, 2021

112128
[*1]The People of the State of New York, Respondent,
v
Robert J. Sorrell, Appellant.

Calendar Date:June 1, 2021

Before:Egan Jr., J.P., Lynch, Clark, Pritzker and Colangelo, JJ.

O'Connell and Aronowitz, Albany (Scott W. Iseman of counsel), for appellant.
Andrew J. Wylie, District Attorney, Plattsburgh (Vivian Y. Joo of counsel), for respondent.



Pritzker, J.
Appeal from a judgment of the County Court of Clinton County (Favreau, J.), rendered February 19, 2020, upon a verdict convicting defendant of the crimes of driving while intoxicated (two counts) and leaving the scene of an incident without reporting, and the traffic infractions of moving from a lane unsafely and refusal of a chemical test.
Following a motor vehicle accident on December 15, 2018, in which defendant's vehicle collided with a guiderail in Clinton County, defendant was charged by indictment with two counts of driving while intoxicated, moving from a lane unsafely, leaving the scene of an incident without reporting and refusal of a chemical test. Defendant was convicted as charged and sentenced to concurrent six-month terms in jail followed by five years of probation for his convictions of driving while intoxicated, and certain fines were imposed as to the remaining convictions. Defendant appeals.
Defendant contends that the verdict as to his conviction for leaving the scene of an incident without reporting is not supported by legally sufficient evidence and is against the weight of the evidence. Initially, defendant's legal sufficiency claim is unpreserved inasmuch as defendant failed to make any arguments regarding the count he now seeks to challenge on appeal (see People v Baber, 182 AD3d 794, 795 [2020], lv denied 35 NY3d 1064 [2020]). "Nevertheless, in reviewing defendant's argument that the verdict is against the weight of the evidence, this Court must necessarily ensure that the People established each element of the crime" (People v Waheed, 176 AD3d 1510, 1511 [2019] [citations omitted], lv denied 34 NY3d 1133 [2020]). "To determine whether a verdict is against the weight of the evidence, this Court must first decide whether, based on all the credible evidence, a different finding would not have been unreasonable, and then, viewing the evidence in a neutral light and deferring to the jury's credibility assessments, weigh the relative probative force of the conflicting testimony and the relative strength of the conflicting inferences that may be drawn from the testimony" (People v Tromans, 177 AD3d 1103, 1103 [2019] [internal quotation marks, brackets and citations omitted]; see People v Burwell, 183 AD3d 173, 176 [2020], lv denied 35 NY3d 1043 [2020]). As relevant here, Vehicle and Traffic Law § 600 (1) (a) provides that "[a]ny person operating a motor vehicle who, knowing or having cause to know that damage has been caused to the real property or to the personal property . . . of another, due to an incident involving the motor vehicle operated by such person[,] . . . shall report the same as soon as physically able to the nearest police station, or judicial officer" when the person who sustained the property damage is not present.
Defendant specifically argues that this conviction is against the weight of the evidence because he reported the accident to law enforcement "approximately 15 minutes after leaving the scene[*2]." To that end, Hunter McCargar testified that, while driving on the day of the accident at approximately 5:24 p.m., he came upon an accident involving a white "banged up" Subaru that had collided with a guiderail. McCargar observed a man, who was the only individual in the Subaru, "on his hands and knees almost in the passenger seat . . . as if he was crawling out of that side" attempting to exit the vehicle. The individual then exited the vehicle from the passenger side of the Subaru and got into the passenger side of a truck, which was occupied by a man in the driver seat and was parked in the middle of the road next to the Subaru. McCargar described the individual who climbed out of the Subaru as "staggered and incoherent." McCargar testified that he exited his vehicle and asked the two men in the truck if they needed help or if McCargar should call someone. The driver of the truck said that he was fine and the driver of the Subaru was silent. McCargar explained that the two men left the scene and that McCargar reported the accident as he did not believe the other men had. The call that McCargar placed was admitted at trial through the testimony of a state trooper, who took the call when it came in at approximately 5:24 p.m.
Another state trooper testified that a call was received at approximately 5:40 p.m. on December 15, 2018 from an individual who identified himself as defendant, during which the caller described that he had been in an accident. Joshua Gushlaw, a state trooper, reported to the scene of the accident and, upon arrival, observed "a white Subaru in the guidewire on the opposite side of the roadway" and described that the damage to the vehicle involved the left, driver side. Specifically, the driver door was impacted and could not be opened and, therefore, the driver would have been unable to exit the vehicle through that door. Gushlaw ran the license plate and the vehicle came back as registered to defendant, so Gushlaw then traveled to the address associated with the vehicle registration. After answering the door, defendant verified his identity and reported that he had just been in an accident after leaving the "Legion where he had seven to nine beers" and that he was unsure of how he had gotten into the accident. Gushlaw inquired into whether defendant had consumed any alcohol since arriving home and defendant conveyed that he had not. Ultimately, Gushlaw arrested defendant and brought him to the State Police barracks where Gushlaw administered defendant's breathalyzer. The results of this breath test, which were admitted into evidence, indicated that defendant had an alcohol level of .12.
On appeal, defendant relies upon the fact that "the accident occurred on a desolate mountain road" in crafting his argument that he was unable to call to report the accident until he arrived home. In this regard, the jury could have found that defendant, by calling in the accident about 15 minutes after it occurred, had [*3]reported the accident "as soon as physically able" (Vehicle and Traffic Law § 600 [1] [a]). However, inasmuch as McCargar testified that he called to report the accident from the scene without issue, the jury could infer that defendant was physically able to call the police from the site of the accident but chose not to and, instead, only did so after returning home and realizing he could be identified (see generally People v Field, 175 AD2d 291, 292 [1991]). Thus, according "deference to the credibility determination[s] of the jury . . ., after reviewing any rational inferences that may be drawn from the evidence and evaluating the strength of such conclusions," we find that the verdict was supported by the weight of the evidence (People v Lentini, 163 AD3d 1052, 1054 [2018] [internal quotation marks, brackets and citation omitted]; see People v Field, 175 AD2d at 292).
Defendant also asserts that County Court erred in declining his request to instruct the jury as to driving while ability impaired as a lesser included offense of the count of the indictment charging driving while intoxicated under Vehicle and Traffic Law § 1192 (3). "A defendant is entitled to a lesser included offense charge upon request when (1) it is impossible to commit the greater crime without concomitantly committing the lesser offense by the same conduct and (2) there is a reasonable view of the evidence to support a finding that the defendant committed the lesser offense but not the greater" (People v Magnuson, 177 AD3d 1089, 1094 [2019] [internal quotation marks and citations omitted]; see CPL 300.50 [1]). Vehicle and Traffic Law § 1192 (3) specifies that "[n]o person shall operate a motor vehicle while in an intoxicated condition," while, on the other hand, Vehicle and Traffic Law § 1192 (1), specifies that "[n]o person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol."
Initially, the People concede that driving while ability impaired is a lesser included offense of driving while intoxicated (see Vehicle and Traffic Law § 1192 [1], [3]; People v Carota, 93 AD3d 1072, 1075 [2012]). Therefore, the issue distills to whether a rational factfinder could find that defendant was only impaired and not intoxicated when operating his vehicle on the evening in question. At trial, McCargar described that defendant appeared to be "very stumbly" and "all over the place" when he came upon the accident. Gushlaw testified that, at two different points during his interactions with defendant, defendant reported that he had consumed "seven to nine beers." Moreover, defendant reported that he had not consumed any alcohol since returning home. Gushlaw testified that while talking to defendant at his home, defendant had watery eyes, was slurring his speech and was leaning on various items for support. Defendant then effectively refused field sobriety tests and, therefore, was placed under arrest and [*4]transported to the State Police barracks. Once at the barracks defendant attempted to "lower his blood alcohol [level]" by eating soap, and informed Gushlaw of this. Thereafter, defendant failed to follow instructions twice while conducting breath tests and, therefore, three attempts were made by defendant, the third such attempt resulted in an alcohol level of .12. Notably, Gushlaw testified that while at the barracks defendant reported that "he had six or seven beers" and opined that defendant was intoxicated. For his part defendant claimed that he had consumed approximately eight ounces of a mixture of "brandy, honey and lemon" after arriving home, prior to Gushlaw arriving. In this regard, defendant verified that this was the first time that he had mentioned consuming alcohol after arriving home and placing the call reporting the accident.
Based on the foregoing, County Court did not err in declining to instruct the jury as to the lesser included offense of driving while ability impaired as there is no reasonable view of the evidence to support a finding that defendant committed this lesser offense but not the greater offense of driving while intoxicated. Specifically, there was ample evidence as to defendant's own admissions regarding how much alcohol he had consumed as well as witness testimony as to defendant's appearance and actions following the accident, which established that defendant was not just impaired but was, in fact, intoxicated. This evidence, coupled with the results of the breathalyzer that was administered hours after the accident occurred, supports the court's decision not to issue the requested instruction (see People v Sawinski, 148 AD2d 888, 889 [1989], lv denied 74 NY2d 852 [1989]; compare People v Carota, 93 AD3d at 1076; cf. People v Mason, 299 AD2d 724, 725 [2002], lv denied 100 NY2d 564 [2003]).
Egan Jr., J.P., Lynch, Clark and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.